UNITED STATES DISTRICT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. 4:15-cr-0566-01 |
| | § | |
| LEE ROY VILLARREAL | § | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR TO TRANSFER CASE TO McALLEN DIVISION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the United States of America, by and through Abe Martinez, Acting United States Attorney, and Anibal J. Alaniz, Assistant United States Attorney for the Southern District of Texas, and files this response to Defendant Lee Roy Villarreal's ("Defendant") motion to transfer case to the McAllen division.

1.

**FACTUAL BACKGROUND**

<u>Kidnapping of Ovidio Guerrero</u>

On May 28, 2011, Ovidio Guerrero ("Guerrero") and his wife, Veronica Guerrero, arrived at the home of Gerardo Olivarez, Guerrero's cousin, located on 8 Mile Line Road and Los Ebanos Road in Hidalgo County, Texas to visit. When they arrived Guerrero got out of the vehicle and went inside to use the bathroom. Meanwhile Veronica Guerrero was getting her son out of the vehicle when she saw a Ford F-150 pickup truck pull into the driveway. The Ford F-150 pickup truck was occupied by two males. The driver of the Ford F-150 pickup truck identified himself as a police officer and told Veronica Guerrero that he needed to talk to "Ruben Olivarez". At that time, Guerrero exited the house and approached the driver who asked

1

Guerrero for identification. The driver told Guerrero that he knew that he was "Ruben". Guerrero told the driver that his name was not "Ruben". The Ford F-150 pickup truck passenger handcuffed Guerrero and put him in the Ford F-150 truck and they left.

Veronica Guerrero called the Hidalgo County, Texas Sheriff's Office and other local police departments in an attempt to find out which police department had custody of her husband. However, none of the police departments had Guerrero in their custody.

Sometime thereafter Veronica Guerrero called her husband's cellular telephone and left him a message. Shortly thereafter Veronica Guerrero received a call from her husband who told her that they were questioning him and that he would call back later. Guerrero never call back and his family has not seen him since that day.

Since the two men that took Guerrero did not identify themselves, law enforcement officers did not have any leads as to Guerrero's whereabouts. However, on June 12, 2011 a break in the case occurred when Gerardo Villarreal[1] was arrested on unrelated state charges. While in custody, Gerardo Villarreal told local law enforcement officers that he had information regarding a kidnapping. Gerardo Villarreal told officers that he was involved in the kidnapping of an individual in the Mission, Texas area and provided information regarding the preparation, execution, and identities of the participants in the kidnapping. Specifically, Gerardo Villarreal told agents that Guerrero was kidnapped in order to recover a large load of cocaine that was stolen from a stash house located in the Mission, Texas area.

Gerardo Villarreal told the officers that the stolen cocaine belonged to Gulf Cartel Plaza

---

[1] Gerardo Villarreal is not related to the Defendant.

Boss Miguel Villarreal.[2] Miguel Villarreal is the Defendant's brother who ran a large-scale drug trafficking organization that illegal imported marijuana and cocaine into the United States from the border town of Reynosa, Tamaulipas, Mexico.[3] Gerardo Villarreal told officers that Miguel Villarreal sent some men from Mexico and some men from Starr County, Texas to Hidalgo County, Texas to kidnap Felipe Angel Guerra and Gerardo Olivarez. Miguel Villarreal suspected that Felipe Angel Guerra and Gerardo Olivarez were involved in stealing the cocaine from his stash house in Mission, Texas. Shortly after kidnapping Guerrero, they realized that they had kidnapped the wrong person.

<u>Drug Trafficking</u>

During the course of the investigation, agents discovered that the Defendant not only coordinate the kidnapping but that was also involved in receiving large amounts of controlled substances from his brother, Miguel Villarreal, and coordinating the transportation of the controlled substances from the Rio Grande Valley of Texas to Houston, Texas and various other cities in the United States.

In August 2012, a confidential informant ("CI") told Drug Enforcement Administration ("DEA") agents that Miguel Villarreal was looking for someone to assist him in purchasing 1,000 kilograms of cocaine from a Columbian source of supply in Central America. The CI communicated with Miguel Villarreal via Blackberry Messenger and Miguel Villarreal agreed to send a representative to meet with the CI.

The CI along with DEA Agent Richard Sanchez ("Agent Sanchez") traveled to Panama

---

[2] Miguel Villarreal is deceased. A rival Gulf Cartel Plaza Boss directed the murder of Miguel Villarreal in Reyonsa, Tamaulipas, Mexico.

[3] Reynosa, Tamaulipas, Mexico is located across from McAllen, Texas.

where they met with Miguel Villarreal's representative Gabriel Barrios-Hernandez ("Barrios").[4] On September 26, 2012, the CI and Agent Sanchez met with Barrios in Panama. The CI introduced Agent Sanchez as a Columbian cocaine broker who could deliver multi-hundred kilograms of cocaine to various cities in the United States. During the meeting, Barrios told the CI and Agent Sanchez that Miguel Villarreal's organization had distribution networks in Houston, Texas, Atlanta, Georgia and New York, New York and that they could receive cocaine in Houston, Texas without any problems. At the end of the meeting, Barrios agreed that Miguel Villarreal would buy several hundred kilograms of cocaine at a price of $5,300 per kilogram, a 5% fee transaction fee and $3,000 per kilogram to transport and deliver the cocaine to Houston, Texas.

In early October 2012, Agent Sanchez received calls from Barrios to coordinate the delivery of approximately $800,000 to Agent Sanchez before Agent Sanchez delivered the cocaine in Houston, Texas. During these calls, Barrios asked Agent Sanchez to travel to Houston where his associates would give him the money. Agent Sanchez told Barrios that he was in San Antonio, Texas and asked that his associates bring the money to him. Subsequently, Luis Miguel Hernandez ("Hernandez") delivered approximately $800,000 in cash to Agent Sanchez.

On November 8, 2012, Agent Sanchez conducted a "fake" delivery of the cocaine. On that day, an undercover agent drove a tractor-trailer to Marble-OUS warehouse located at 12229 Sowden Road in Houston, Texas where the Defendant, Barrios and Hernandez believed the cocaine was going to be off loaded. Instead, Agent Sanchez had Houston, Texas police officers approach the warehouse where they arrested Hernandez and the undercover agent.

Barrios is cooperating with the government. During interviews, Barrios told agents that

---

[4] Hector Gabriel Barrios-Hernandez plead guilty to the kidnapping of Ovidio Guerrero and is pending sentencing.

once Miguel Villarreal agreed to buy the cocaine he instructed Barrios to contact the Defendant to tell him to coordinate the delivery of the $800,000 to Agent Sanchez. Barrios told agents that he called the Defendant and gave the Defendant Agent Sanchez's phone number and that Defendant coordinated the delivery of the $800,000 to Agent Sanchez.

A grand jury in the Western District of Texas charged Barrios and Hernandez with conspiracy to possess with intent to distribute a controlled substance. Both plead guilty and were sentenced to prison.

Cooperating Defendants and Confidential Sources

The government will present evidence through cooperating defendants and confidential sources that the Defendant was involved in coordinating the transportation of large quantities of cocaine and marijuana to Houston, Texas as well as other cities across the United States.

2.

PROCEDURAL HISTORY

On January 10, 2012, a grand jury in the McAllen division returned an indictment charging Gerardo Villarreal with conspiracy to commit kidnapping and the kidnapping of Ovidio Guerrero. Gerardo Villarreal plead guilty in Criminal No. 7:12-cr-0007 before United States District Judge Randy Crane ("Judge Crane"). Gerardo Villarreal is pending sentencing.

On July 23, 2013, a grand jury in the McAllen division returned an indictment charging Alan Alpizar-Cordoba, Hector Gabriel Barrios-Hernandez, Jose Lorenzo Davila, Roel Garza and Orlando Hernandez with conspiracy to commit kidnapping and the kidnapping of Ovidio Guerrero.[5] Hector Gabriel Barrios-Hernandez, Jose Lorenzo Davila, Roel Garza and Orlando

---

[5] Alan Alpizar-Cordoba and Francisco Licea-Guerrero are fugitives.

Hernandez plead guilty in Criminal No. 7:13-cr-1082 before United States District Judge Ricardo H. Hinojosa ("Judge Hinojosa").[6] Hector Gabriel Barrios-Hernandez, Jose Lorenzo Davila, Roel Garza and Orlando Hernandez are pending sentencing.

On October 21, 2015, a grand jury in the Houston division returned an indictment charging the Defendant with conspiracy to possess with intent to distribute a controlled substance, conspiracy to commit kidnapping, the kidnapping of Ovidio Guerrero and aiding and abetting the use and carrying of a firearm during and in relation to a crime of violence. [7]

3.

## DEFENDANT'S ARGUMENT

The Defendant argues that the Court should consider the following factors when determining whether to grant the intra-district transfer:[8]

a.    Convenience of the Defendant;

b.    Convenience of the Witnesses; and

c.    Interest of Justice.

4.

## APPLICABLE RULES AND CASE LAW

a.    <u>United States Constitution</u>

Article III § 2 clause 3 of the United States Constitution provides that "[t]he Trial of all

---

[6] Pursuant to the local rules, the Government filed a notice of related cases. However, Judge Hinojosa did not transfer the case to Judge Crane.

[7] The charged drug trafficking conspiracy stems from the Defendant being involved in the receipt, storage and transportation of the controlled substances from the Rio Grande Valley of Texas to Houston, Texas and various cities outside the State of Texas.

[8] The Defendant cites Federal Rule of Crim. Proc. 21(b). However, Rule 21(b) does not apply in this case because it deals with the transfer of cases from one judicial district to another.

Crimes . . . shall be held in the State where the said Crimes shall have been committed." The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. U.S. Constitution, Amend. VI.

      b.    <u>Federal Rule of Criminal Procedure 18</u>

Federal Rule of Criminal Procedure 18 ("Rule 18") governs intra-district transfers. Rule 18 states:

> [u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

A district court has broad discretion in determining whether to transfer a case within a judicial district. <u>United States v. Dickie</u>, 775 F. 2d 607, 610 (5th Cir. 1985). Because a district court has such discretion, it is not required to grant an intra-district transfer request absent a ***"strong showing of prejudice" by the defendants***. <u>United States v. Duncan</u>, 919 F. 2d 981 (5th Cir. 1990) (emphasis added).

Furthermore, the 5th Circuit Court of Appeals has held there are other factors that the district court can consider aside from the Rule 18 factors, that being, convenience of the defendant, victims, witnesses and prompt administration of justice. Such other factors include, pre-trial publicity, security concerns, court docket management. see, <u>United States v. Lipscomb</u>, 299 F.3d 303 (5th Cir. 2002).

5.

**GOVERNMENT'S ARGUMENT**

<u>Defendant Failed to Produce Any Evidence to Carry</u>
<u>Burden to Show a Strong Prejudice</u>

In his motion, the Defendant sets forth various reasons why the Court should grant the intra-district transfer. However, the Defendant fails completely to produce and/or offer any evidence regarding these allegations beyond the mere allegations of counsel.

For instance, the Defendant claims that a trial in the Houston division would be inconvenient to him due to the cost of travel and lodging. However, the Defendant did not submitted any evidence, through an affidavit, testimony at a hearing or any in any other manner, to show the Court that he is financially unable to pay for such costs.

The Defendant, however, fails to inform the Court he was living in Los Angeles, California at the time of his arrest. On February 20, 2016, UCLA police conducted a traffic stop on a 2017 Porshe 911 Carrera[9] and identified the driver as the Defendant and the passenger as his wife. During the inventory of the vehicle, the officers found that the Defendant was wearing a Rolex watch and that the wife had a stack (approximately 1 inch thick) of $100 bills in her purse. (see Attached "A" - Police Report). Lastly, the defendant hired four (4) private attorneys to represent him in this matter.

Therefore, the claim that he is "financial" unable to pay for his travel and lodging if the trial is conducted in the Houston division is simply without any merit.

Likewise, the Defendant claims that his witnesses will be inconvenienced by having to travel to Houston, Texas. However, the Defendant did not produce any evidence as to the identity of the witnesses, the number of witnesses, where the witnesses reside, where the witnesses work or how specifically these witnesses will be inconvenienced.

The Defendant further claims that the "interest of justice" requires the intra-district

---

[9] A Google search reveals that the value of a 2016 Porshe Carrera 911 is between $102,000 to $112,000.

transfer because conducting the trial in the Houston division will waste judicial resources. Again, the Defendant does not produce any evidence regarding the cost of judicial resources from conducting the trial in the Houston division versus conducing the trial in the McAllen division.

Therefore, the Defendant has completely failed to carry his burden of showing a "strong prejudice" against him if the trial is conducted in the Houston division.

Venue in Proper in
the  Houston Division

The Defendant's motion requesting the intra-district transfer is premised entirely on the fact that the Defendant is charged with the kidnapping that occurred in the McAllen division. The Defendant completely ignores the fact that the Defendant is also charged with conspiracy to possess with intent to distribute a controlled substance that spans several years. (see Attachment "B" - Indictment).

The government intends to introduce at trial, through cooperating defendants, confidential sources and government agents that the Defendant engaged in a conspiracy to distribute controlled substances. Specifically, the evidence will show that the Defendant received controlled substances from his brother, Miguel Villarreal and that the Defendant coordinated the transportation of those controlled substances to Houston, Texas as well as various other cities in the United States. In fact, as described above, the Defendant coordinated the delivery of approximately $800,000 in cash to an Undercover DEA agent for the purchase and delivery of several hundred kilograms of cocaine at a warehouse located in Houston, Texas.

It is well settled law that venue in a criminal case exists anywhere within a judicial district in which the crime was committed and that there is no constitutional right to a trial in a particular division of a judicial district. United States v. Weddell, 800 F. 2d 1404, 1406 (5th Cir.

9

1986).

The Defendant's motion requesting the intra-district transfer is mainly premised on his claim of inconvenience. However, in United States v. Gourley, 168 F. 3d 165 (5th Cir. 1999) the 5th Circuit held that this circumstance alone does not mandate an intra-district transfer and that any "inconvenience of Gourley going to trial in Laredo would be minimal at best in this age of convenient travel, communications, discovery and trial testimony preparation.

The case of United States v. Alvarez, 561 Fed. Appx. 375, 2014 U.S. App. LEXIS 6440 (5th Cir. 2014) (*unpublished*) presents a good example on the 5th Circuit analysis regarding an intra-district transfer. After a mistrial, the trial court in Alvarez transferred the trial from the McAllen division to the Houston division. The defendants argued that the transfer to Houston was inconvenient because the trial was moved more than 300 miles from where the parties and their counsel lived. The 5th Circuit held that his factor alone was insufficient to reverse the trial court's decision to transfer venue. In upholding the trial court's decision to transfer venue, the 5th Circuit also held that venue in the Houston division was proper because although many of the conspiracy activities occurred in the McAllen division, various drug trafficking and money laundering activities occurred elsewhere in the district, including Houston, and even outside the district, including Dallas, Texas and Atlanta, Georgia.

Similarly to the Alvarez defendants, the conspiracy activities of the Defendant were not geographically limited to the McAllen division. In fact, the evidence will show that the conspiracy activities of the Defendant occurred in Houston, Texas as well as various other cities in the United States.

10

6.

## CONCLUSION

The Defendant failed to produce any evidence showing a "strong prejudice" against him if the trial is conducted in the Houston division and since some conspiracy activities occurred in the Houston division, venue is completely proper in the Houston division.

WHEREFORE, PREMISES CONSIDERED, the Government requests that the Court deny the Defendant's motion to transfer the case to the McAllen division.

Respectfully submitted,

ABE MARTINEZ
Acting United States Attorney

*/s/ Anibal J. Alaniz*
Anibal J. Alaniz
Assistant United States Attorney
Texas Bar No. 00966600
Federal I.D. No. 12590
1000 Louisiana
Suite 2300
Houston, Texas 77002
(713) 567-9000 (office)
(713) 567-9487 (direct)

## CERTIFICATE OF SERVICE

On April 4, 2017, the Government's Response to Defendant Lee Roy Villarreal's motion to transfer case to the McAllen Division was filed by ECF and served on counsel of record.

*/s/ Anibal J. Alaniz*
Anibal J. Alaniz
Assistant United States Attorney

11