1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
2                        HOUSTON DIVISION

3

4    UNITED STATES OF AMERICA     .    4:15-CR-0566-1

5    VERSUS                       .    HOUSTON, TEXAS

6    LEE ROY VILLARREAL           .    NOVEMBER 25, 2019

7    . . . . . . . . . . . . . .       10:15 A.M.

8

9                    TRANSCRIPT OF MOTION HEARING
                BEFORE THE HONORABLE ANDREW S. HANEN
10                 UNITED STATES DISTRICT JUDGE

11

12

13                        *APPEARANCES*

14

15

16   FOR THE GOVERNMENT:

17        Casey MacDonald and Anibal Alaniz
          Assistant United States Attorneys
18        1000 Louisiana
          Suite 2300
19        Houston, Texas  77002

20

21   FOR THE DEFENDANT:

22        Clay S. Conrad
          Paul C. Looney
23        LOONEY & CONRAD PC
          11767 Katy Freeway
24        Suite 740
          Houston, Texas  77079

25

1                          *APPEARANCES - CONTINUED*

2

3

4    ALSO REPRESENTING THE DEFENDANT:

5          Martie Garcia-Vela
           Attorney at Law
6          101 West Fifth Street
           Rio Grande City, Texas   78582
7

8    OFFICIAL COURT REPORTER:

9          Mayra Malone, CSR, RMR, CRR
           U.S. Courthouse
10         515 Rusk, Room 8004
           Houston, Texas   77002
11

12

13   Proceedings recorded by mechanical stenography.   Transcript
     produced by computer-aided transcription.
14

15                               - - - - -

16

17

18

19

20

21

22

23

24

25

1                          ***PROCEEDINGS***

2              THE COURT:  Before we -- let me ask y'all:  Are we

3      ready to proceed with regard to the defendant's earlier motion

4      regarding individuals, the 404(b) stuff?

10:15    5              MS. MACDONALD:  The government is ready to proceed;

6      however, we did go back to the grand jury and obtain a first

7      superseding indictment, Your Honor, on November 21st, 2019.

8      And given the new charges in that indictment, it is our

9      position --

10:15   10              THE COURT:  What are the new charges?

11              MS. MACDONALD:  We expanded the conspiracy dates and

12      we included the second object of the drug conspiracy, which is

13      Count One, to include marijuana.

14              THE COURT:  Okay.

10:16   15              MR. LOONEY:  Your Honor, it's a massive change.  We

16      have not evaluated any of this discovery for marijuana because

17      it wasn't charged.

18              MS. MACDONALD:  I guess our view is the issue is now

19      moot given the indictment now charges marijuana and all the

10:16   20      transactions that were the subject of the 404(b).

21              MR. LOONEY:  And we have not reviewed any of this in

22      that light, and we are not in a position where we can take any

23      position on their idea that it's moot.  It may well be, but we

24      just don't know.

10:16   25              THE COURT:  Well, let me -- let's talk about maybe the

10:16    1   best way to move this case down the road, and obviously I have

2   read the motion for conflict counsel.  Defendants haven't

3   responded to it yet in writing, but what is the -- I mean, what

4   is your position on that?

10:17    5          MR. LOONEY:  My client got caught by surprise with

6   this, obviously.  We have been on the case for a long time.

7   And I met with him twice over the last 24 hours, and he would

8   like to have a brief period of time to have an independent

9   attorney advise him on what our position should be.

10:17   10         THE COURT:  Mr. Villarreal, where do you live?

11         THE DEFENDANT:  In McAllen, Texas.

12         THE COURT:  I didn't hear him.

13         THE DEFENDANT:  In McAllen, Texas.

14         MR. LOONEY:  McAllen.

10:17   15         THE COURT:  I mean, it occurs to me that if we are

16   going to have conflict counsel visit with him, that I ought to

17   appoint somebody.

18         MR. LOONEY:  Okay.

19         THE COURT:  As opposed to just letting y'all choose

10:18   20   somebody because if you choose somebody that --

21         MR. LOONEY:  I wasn't going to choose.

22         THE COURT:  No.  No.  No.  I understand that.  Even if

23   Mr. Villarreal chooses somebody and then the government comes

24   back and says, oh, well, he is involved or she is involved in

10:18   25   this, I mean --

10:18        1          MR. LOONEY:  Your Honor, I don't know how we avoid

             2   that with anybody you might appoint either.

             3          THE COURT:  Yeah.  I mean, I may know less than y'all,

             4   quite frankly, about all the extensive facts, but I'm one of

10:18        5   the few people, I think, in Houston that knows a lot of the

             6   attorneys in the Valley.

             7          MR. LOONEY:  I agree.

             8          THE COURT:  All right.  Let's assume I appoint

             9   somebody.  Talk to me about scheduling.  How would we do this?

10:19       10          MR. LOONEY:  Well, obviously --

            11          THE COURT:  I mean, we are right in front of the

            12   holidays.

            13          MR. LOONEY:  Yeah.  Obviously, I would have to have an

            14   opportunity to go through some type of debriefing with conflict

10:19       15   counsel, and I can do that nearly anytime except this week.

            16   There are a whole bunch of documents -- I don't know what

            17   conflict counsel might want to look at or not look at.  I'm

            18   sure I can do a thumbnail sketch in a few hours.

            19          MS. MACDONALD:  I would think that the Court could

10:19       20   provide conflict counsel with a copy of the sealed filing and

            21   that would be sufficient for conflict counsel to adequately

            22   advise the defendant.

            23          MR. LOONEY:  I think they need to know a lot of the

            24   underlying facts.

10:20       25          THE COURT:  Well, that may be true too, but I mean, I

10:20     1   may have to provide them the sealed motion, quite frankly, to

          2   make sure they look at it and say, yes, I'm not involved in any

          3   of this.

          4            MR. LOONEY:  Yeah.  Before you make an appointment.

10:20     5            THE COURT:  Now, have you guys signed on to represent

          6   Mr. Guerra, the attorney, in the south Texas case?

          7            MS. MACDONALD:  It's Garcia, Your Honor.

          8            THE COURT:  Garcia.  I'm sorry.

          9            MR. LOONEY:  My partner has officially signed on.  I

10:20    10   have been advising him all along.

         11            THE COURT:  Okay.  And that involved -- doesn't

         12   involve the drug case?  It involves bribery, right?

         13            MR. LOONEY:  That one is lawyer to lawyer, lawyer to

         14   politician.  Has nothing to do with drugs.  It has to do with

10:20    15   the potential of construction contracts.

         16            THE COURT:  And I assume that's in McAllen?

         17            MS. MACDONALD:  Yes.  It's pending before Judge

         18   Alvarez.  Your Honor, we were advised today by Mr. Looney that

         19   Ms. Garcia Vela, Mr. Villarreal's third attorney, has also been

10:21    20   representing attorney Daniel Garcia in the McAllen matter as

         21   well, so our motion will include all three attorneys now.

         22            MR. LOONEY:  To the extent, if there is a conflict for

         23   us, she is as conflicted for exactly the same reasons.

         24            THE COURT:  Let me make sure on the record.  Y'all

10:21    25   have seen their sealed filing?

10:21    1              MR. LOONEY:  Yes, we have.

         2              THE COURT:  So anything I say here out of that filing

         3     is not news to y'all?  You have read it?

         4              MR. LOONEY:  That's right.

10:21    5              THE COURT:  They are representing the attorney,

         6     Garcia.  Who is alleged to have gone with Mr. Villarreal to

         7     Cancun?

         8              MS. MACDONALD:  Attorney Daniel Garcia and another

         9     government witness.

10:21   10              THE COURT:  I wanted to make sure I had the right

        11     attorney.  And the theory is -- this is a question, not a

        12     statement, so I want y'all to correct me -- is that if the

        13     prosecution proceeds against Mr. Villarreal, part of that

        14     prosecution is that -- to prove his connection with the drugs

10:22   15     and the cartel and all of this other stuff, that after his

        16     brother was killed, that the widow and Mr. Garcia and

        17     Mr. Villarreal were at least, in theory, allegedly down in

        18     Cancun looking for drugs and money to continue the business?

        19              MS. MACDONALD:  That's correct.

10:23   20              THE COURT:  And I'm assuming the government at least

        21     thinks they have some proof of that?

        22              MS. MACDONALD:  We have a government witness, Fabiola

        23     Chapa, who will testify to that.

        24              THE COURT:  Which, in theory, would make Mr. Garcia

10:23   25     either a witness here or a nonwitness?

8

10:23    1            MR. LOONEY:  Or perhaps an unindicted coconspirator.

         2            THE COURT:  That's what I was thinking or --

         3            MR. LOONEY:  And, by the way, Judge, this allegation

         4   was brand new to us.  We had no idea that there was any thought

10:23    5   that he had done any of this sort of thing.

         6            THE COURT:  But even if he's -- let's set aside the

         7   fact that he might be an unindicted coconspirator.  If he

         8   testifies for the government, you guys clearly have a big

         9   problem, but if he testifies for y'all, then you actually have

10:24   10   a pretty big appearance problem.

        11            MS. MACDONALD:  Another concern that the government

        12   has is that each party, Mr. Villarreal and Attorney Danny

        13   Garcia, know information about the other and could cooperate

        14   against each other, setting aside the whole trial issue.

10:24   15            THE COURT:  And they could what?

        16            MS. MACDONALD:  Cooperate against each other.  And how

        17   can counsel who represent both advise them in either way?

        18            THE COURT:  Testify against each other?

        19            MS. MACDONALD:  Right.

10:24   20            THE COURT:  I understand that.  I mean, that's an

        21   immediate conflict.

        22            MR. LOONEY:  But that's also speculative.

        23            THE COURT:  I know, but even if you think of -- flip

        24   it around.  Even if they testify for each other, although I

10:24   25   don't know that Mr. Villarreal knows anything about the south

10:24  1    Texas stuff.  But if he was to come up here and testify for

2    Mr. Villarreal, I mean, it's not like the government is not

3    going to point out that they are represented by the same

4    lawyers and at least hint that there was cooperation there.

10:25  5              Okay.  Let's drop back off that subject for a

6    minute and let's go back to the new indictment.

7              I hear the defense saying, look, you have opened

8    a new can of worms here.  I keep putting off the trial, and

9    every time I put it off, it gets more complicated.  I think we

10:25  10   have reached the goal line and then somebody moves the goal

11   line.

12             MR. LOONEY:  There is a solemic way to deal with the

13   new indictment.  Quash it as an abuse of process because we

14   have gone so deep into this case, to receive it at the last

10:26  15   minute and restart all the discovery evaluation is abusive.

16             MS. MACDONALD:  The charges do not involve any new

17   information or facts.  All the reports that involve marijuana

18   have been tendered to counsel, which is how they were able to

19   file their motion to suppress and raise 404(b) issues.  So

10:26  20   really just expanding the dates of the indictment and adding a

21   new object of the conspiracy --

22             MR. LOONEY:  Your Honor, we never evaluated it for

23   defending marijuana.  Never.  We haven't looked at it for what

24   witnesses we need.  We haven't looked at it for impeachment of

10:26  25   the witnesses that they would have.

10:26    1          The only reason we filed 404(b) was just to keep

         2    the stink out of the cocaine case.  But there's a major

         3    evaluation for marijuana that is in front of the defense team

         4    that didn't have to be.

10:26    5          MR. CONRAD:  One more thing, Your Honor.  Because some

         6    of the dates have changed between the two indictments, it does

         7    mean that we are going to have to file a motion to discover the

         8    discrepancies between what the different grand juries heard,

         9    because obviously they heard different testimony on dates.  And

10:27   10    we're going to need to know what changed there.

        11          THE COURT:  Hold on just a second.

        12          *(Pause)*

        13          THE COURT:  It seems to me that what we're going to

        14    have to do is the Court needs to appoint conflict counsel, and

10:28   15    I'm soliciting -- by saying this, I'm soliciting y'all's input.

        16    Conflict counsel needs to meet with both sides and then needs

        17    to meet with Mr. Villarreal.  And then either the defense

        18    attorneys are going to have to withdraw or we need to have a

        19    Garcia hearing.

10:29   20          MR. LOONEY:  Unless I'm instructed by my client to

        21    withdraw following the advice of conflict counsel, it will be a

        22    hearing.  It won't be a voluntary withdrawal.

        23          THE COURT:  No.  I understand that.  I mean, that's

        24    what I was saying.  I was giving you the chance that it could

10:29   25    fall either way.

10:29    1                      Are you Ms. Garcia?

         2              MS. GARCIA:  Yes, Your Honor.

         3              THE COURT:  Come up here.

         4         *(Compliance)*

10:29    5              THE COURT:  You are always so quiet at these things.

         6              MR. LOONEY:  Your Honor, she is also Danny Garcia's

         7    sister.

         8              THE COURT:  Okay.  And that's what I wanted to -- I

         9    wanted to get your involvement in this too because you've

10:29   10    obviously -- not obviously but both Mr. Conrad and Mr. Looney

        11    have suggested that you're the one that has the wealth of

        12    knowledge on this case.

        13                   All right.  First of all, you are Mr. Garcia's

        14    sister?

10:30   15              MS. GARCIA:  Yes, Your Honor.

        16              THE COURT:  The attorney that's indicted down in the

        17    case involving Weslaco and Mercedes?

        18              MS. MACDONALD:  Yes.  Weslaco.

        19              THE COURT:  The one pending in Judge Alvarez's court?

10:30   20              MS. GARCIA:  Yes, Your Honor.

        21              MR. LOONEY:  She has also advised him extensively on

        22    that case.

        23              THE COURT:  Okay.  That's my question.  Is that

        24    accurate?

10:30   25              MS. GARCIA:  Yes, Your Honor.

10:30    1          THE COURT:  All right.  And then do you practice with

         2   him?

         3          MS. GARCIA:  I have my own office.  We office out of

         4   the same building, but we have separate everything.

10:30    5          THE COURT:  Do you office in McAllen or Rio Grande

         6   City?

         7          MS. GARCIA:  Rio Grande City.

         8          THE COURT:  Okay.

         9          MS. GARCIA:  But I do live in Fort Bend County

10:30   10   currently.

        11          THE COURT:  You live in Fort Bend County but you

        12   office in Rio Grande City?

        13          MR. LOONEY:  She is migratory, Your Honor.  Her

        14   husband is in law school here.

10:30   15          THE COURT:  Believe me, I have made that drive a

        16   million times, and the worst part about it is Fort Bend County,

        17   dealing with all of that construction.

        18          And I assume that you have been -- since day one,

        19   have you been involved representing Mr. Villarreal?

10:31   20          MS. GARCIA:  Yes, Your Honor.

        21          THE COURT:  Okay.

        22          MR. LOONEY:  She is the one that got him out on bond

        23   in California.

        24          THE COURT:  And -- because you guys came in the case

10:31   25   later, right?

10:31   1          MR. LOONEY:  Yes.  We came in the case --

        2          THE COURT:  But you have been here since the

        3   beginning?

        4          MS. GARCIA:  Yes, Your Honor.

10:31   5          MR. LOONEY:  We came in the case when other lawyers

        6   got disqualified.

        7          MR. ALANIZ:  Your Honor, may I correct that?

        8   Basically, what happened is Mr. Villarreal's first attorney

        9   that made an appearance on his behalf was Mr. Daniel Garcia

10:31  10   initially.  Then shortly thereafter, another lawyer came

       11   onboard to represent him, and that's Juan Guerra.

       12          THE COURT:  Okay.  That's where I was getting Guerrera

       13   from.

       14          MR. ALANIZ:  So those two individuals, those lawyers,

10:31  15   were subsequently -- they withdrew because we filed motions to

       16   disqualify.

       17          THE COURT:  I have read those motions.

       18          MR. ALANIZ:  After Mr. Garcia withdrew from his

       19   representation, that's when Ms. Garcia filed a notice of

10:32  20   appearance.  That's when she came onboard.

       21          MS. MACDONALD:  And Mr. Looney and Mr. Conrad were

       22   already attorneys of record at that point.

       23          MR. LOONEY:  That's the only time she formally was in,

       24   but she was there from the very beginning.

10:32  25          THE COURT:  Okay.

10:32    1          MR. LOONEY:  Not that it matters much.  She's here.

         2          THE COURT:  All right.  Here's what I'm thinking.

         3     There's no way we are going to get to trial in February, not

         4     with the holidays sitting right here and not with this issue,

10:32    5     because we are going to have to resolve this issue.  And my

         6     guess, given y'all's schedule and given whoever I appoint's

         7     schedule and, you know, all the different pieces that are going

         8     to have to come to fruition, we are probably not going to have

         9     the Garcia hearing, assuming we have to have one, until

10:33   10     sometime in January, would be my guess.

        11              So what I'm going to do is go back and look at my

        12     schedule and search for a new trial date.  So while you're

        13     currently set for trial in February, I mean, I'm basically

        14     telling you you are not going.

10:33   15          MR. LOONEY:  Your Honor, while you are searching for a

        16     date, we had our hands full getting ready for February before

        17     marijuana was included.  If you could graciously give us a

        18     little extra time if we are still here.  Obviously, if we are

        19     not here, somebody is going to have to have a lot of time.

10:33   20          THE COURT:  I know.  And why I'm probably -- I'm

        21     telling you you are not going in February.  I probably won't

        22     give you a new trial date until after we have a Garcia hearing

        23     because it doesn't make any sense --

        24          MS. MACDONALD:  That makes sense.

10:33   25          THE COURT:  -- making y'all jump through all these

10:33   1   hoops the next six weeks for that very reason, that if we have

2   new attorneys --

3         MR. LOONEY:  Just so that we are all on the same page,

4   my understanding of the law -- and somebody correct me if I'm

10:34   5   wrong -- while this disqualification is pending, we need to

6   just stop until we find out if we are conflicted or not.

7   That's my understanding of the law.

8         THE COURT:  Well, I don't know if you need to stop

9   necessarily.  I mean --

10:34   10         MR. LOONEY:  We don't need to be interviewing anybody.

11   We don't need to be --

12         THE COURT:  It may be a waste of time.  Because if you

13   are later disqualified --

14         MR. LOONEY:  Then what I would like to announce to the

10:34   15   Court -- and let the Court instruct me to the contrary if the

16   Court wants to -- we are going to accumulate the information to

17   be helpful to conflict counsel.  We're going to spend time with

18   conflict counsel.  But everything else will stop until we know

19   if we are going to remain on the case or not.

10:34   20         THE COURT:  I think that makes sense actually.

21         Any objection to that?

22         MS. MACDONALD:  No.  It makes sense, Your Honor.

23         THE COURT:  I will send out a notice as to whom I'm

24   appointing.  As to who?  As to whom?  I don't know which one.

10:35   25   And let y'all know.

10:35    1          My first instruction to whomever I appoint -- I

2     know whomever is right -- would be to have them contact this

3     set of lawyers and this set of lawyers and eventually,

4     Mr. Villarreal, he is going to want to visit with you, but he

10:35    5     or she, whoever I appoint, has got to figure out the lay of the

6     land before they ever get that far.

7          At some point in time he may want to visit with

8     all four of y'all together, but eventually he is going to want

9     to sit down with you by yourself and visit.

10:36    10          I'm assuming we all know the law on this, but,

11     you know, the defendant has a right to counsel of his choice,

12     and that's a pretty strong presumption that he gets, getting

13     counsel of his choice, unless there is a conflict.

14          And the Court usually -- I mean, I try to honor

10:36    15     that.  I think in 15 years or 18 years, however many years it's

16     been, I have only disqualified two lawyers, and both of them

17     ended up being some kind of witness.

18          MR. LOONEY:  Your Honor, as to the who and whom,

19     you're a federal judge, it's whatever you say it is.

10:36    20          THE COURT:  I know, but I'm actually trying to -- you

21     know, in my mind, I'm thinking, well, some people are in the

22     Valley, some people are here, you know.  And some people are

23     going to --

24          MR. LOONEY:  Whether it is who or whom, any federal

10:37    25     judge can declare that for his courtroom.

10:37   1    THE COURT:  I like to be accurate if I possibly can.

     2          I will do that.  It's doubtful if I get it done

     3    between now and Thanksgiving, but I will try to get it done as

     4    early in December as possible.  Y'all can assume the February

10:37   5    trial date is off.  And I would like to -- I mean, my goal is

     6    to get this going fast enough that if we have to have a Garcia

     7    hearing, we can hold it in early January so that -- let's

     8    assume we still have the same team after this is all over, that

     9    we can reset it and move forward.

10:37   10          MR. LOONEY:  Very good.

     11          MR. ALANIZ:  Your Honor, just a quick question.  Are

     12    you considering somebody from Brownsville?  Because if you are

     13    considering somebody from McAllen, there are a number of

     14    defendants who are also charged in the same case out in

10:37   15    McAllen, so the case --

     16          THE COURT:  I'm more likely to choose someone from

     17    Brownsville, if I choose someone from the Valley.

     18          MR. LOONEY:  Your Honor, if I may make a suggestion?

     19    I think it would be helpful if you chose somebody from Houston.

10:38   20          THE COURT:  Well, I might do that because the three

     21    defense lawyers are here, but eventually --

     22          MR. LOONEY:  And the prosecutors.  And my client can

     23    come up to meet with them.

     24          THE COURT:  Okay.

10:38   25          MR. LOONEY:  I think we are going to have a less

10:38    1   sticky wicket if we get somebody from Houston.

           2         THE COURT:  Yeah.  Okay.  That's our game plan.

           3   Consider the February trial setting off, and then we will --

           4   once we get the lawyers straight, then we will start

10:38    5   reconsidering these motions.

           6         MR. ALANIZ:  Sure.

           7         THE COURT:  I would ask the defendants if they can

           8   file -- obviously after you visit with your client, which I'm

           9   sure you probably have already done, if you are going to file

10:39   10   something, go ahead and file a written response to the

         11   government's motion to disqualify you.

         12         MR. LOONEY:  As soon as we get our client's

         13   instruction on what he would like the response to be, we will

         14   certainly do so.

10:39   15         THE COURT:  Why don't y'all try to do that by -- let

         16   me get a calendar.

         17         MR. LOONEY:  Your Honor, he would like to visit with

         18   conflict counsel before giving us that instruction.

         19         THE COURT:  That makes sense as far as that goes.

10:39   20   Here's what I would like to do though first:  If you will file

         21   by, let's say, December 13th any response -- not setting out

         22   Mr. Villarreal's position but any response to the factual

         23   assertions that the government made.  So, in other words, if

         24   you think what the government said is wrong factually, tell me

10:40   25   why you think it's wrong.

10:40   1          MR. LOONEY:  Can I share with you what it is going to

2    come down to, Your Honor?

3          THE COURT:  Okay.

4          MR. LOONEY:  Five witnesses that say that's nonsense

10:40   5    and one witness that says that's what happened.

6          THE COURT:  I mean, I didn't really mean on the

7    merits.  I really meant --

8          MR. LOONEY:  I know, but that's what it is going to

9    come down to.

10:40   10          THE COURT:  I really meant vis-a-vis, you know, did

11   Mr. Garcia represent Mr. Villarreal at this point in time?

12          MR. LOONEY:  That part I can tell you, we have no

13   objection to the rendition of that part.

14          THE COURT:  Okay.  I didn't mean about

10:40   15   Mr. Villarreal's alleged conduct.  I meant about the lawyer

16   scenario and who they are representing and who they are not

17   representing.

18          MR. LOONEY:  But a stray last-minute witness has come

19   up with an allegation that is strongly disputed by all of the

10:40   20   other evidence and --

21          THE COURT:  If you are satisfied with saying their

22   factual allegations are true with regard to who is representing

23   who and attorneys and that part of it, then you don't have to

24   do that.  You just said it on the record.

10:41   25          MR. LOONEY:  Okay.

10:41   1          THE COURT:  Right now the ball is in my court.  I will

2    appoint conflict counsel and have him visit with both sides and

3    then with Mr. Villarreal.  And we are probably looking -- I

4    will have to wait to hear from him or her until they are ready,

10:41   5    and then we will move forward.  And I will set a date for the

6    Garcia hearing.  And then assuming at the Garcia hearing that

7    I'm okay with where the team is on both sides, then I will set

8    a schedule.

9          MR. LOONEY:  Okay.

10:41   10          MS. MACDONALD:  Okay.

11          THE COURT:  All right.  Anything else we can get done

12   today?  I don't think so.

13          MR. CONRAD:  I don't think we can do anything at this

14   point.

10:41   15          MR. LOONEY:  And we have already announced that we

16   stopped.

17          THE COURT:  All right.  Thank you all for being here.

18          MR. CONRAD:  Thank you, Judge.

19          MS. MACDONALD:  Thank you, Your Honor.

20      *(Court adjourned at 10:41 a.m.)*

21

22

23

24

25

1                                    * * * *

2

3

4          I certify that the foregoing is a correct transcript from

5     the record of proceedings in the above-entitled cause.

6

7     Date: May 28, 2021

8
                              /s/ Mayra Malone
9                              ----------------------------------------
                              Mayra Malone, CSR, RMR, CRR
10                             Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25