IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CAUSE NO. 4:15-CR-00566 |
| | § | |
| LEE ROY VILLARREAL | § | |
| | § | |

DEFENDANT'S TRIAL MEMORANDUM
REGARDING VICTOR ROMERO TESTIMONY AND RECORDING

I.
STATEMENT OF FACTS

**Timeline of Victor Romero's Interviews**

- **June 30, 2018**: Mr. Romero is questioned by HSI special agent Steven Greenwell about the kidnapping. Mr. Romero does not implicate Lee Roy Villarreal. This interview is recorded, and there is a Report of Investigation. Neither the recording nor the report of investigation makes reference to any photos being shown to Mr. Romero, or any questions asked of him regarding Lee Roy Villarreal. (Exhibit A: Recording of 6/30/18 interview, Exhibit B: Report of Investigation 6/30/18 Interview).

- **August 28, 2018**: Mr. Romero is questioned by HSI special agent Steven Greenwell and AUSA Patty Booth in the presence of his defense attorney. The questioning is recorded, but we have no written Report of Investigation. Mr. Romero denies knowledge of Lee Roy Villarreal's involvement in the kidnapping several times over the 10 minute period that he is pressured to implicate Lee Roy Villarreal. Agents tell Mr. Romero that they "know" that Lee Roy Villarreal conducted and ran a "training session" instructing everyone on how to kidnap individuals. Reference is made to photographs of Lee Roy Villarreal that were shown to Mr. Romero at some point previously when he could not identify them. We have no record of this previous questioning or the photos he was shown at that time. Finally, at the conclusion of the 10-minute period of pressure and coercion on the part of government actors, Mr. Romero finally acquiesces that Lee Roy Villarreal may have been at the kidnapping. He is asked no further questions about the kidnapping at this point. In front of Mr. Romero, his attorney asks if they need something "more incriminating" about Lee Roy Villarreal, to which he is answered "yes." The Agents indicate they were asked to question Mr. Romero about the kidnapping by ASUA Anibal Alaniz. (Exhibit C: Full Recording of 8/18/18 interview).

- **August 28, 2019**: Mr. Romero is questioned by HSI Special Agent Steven Greenwell and FBI Special Agent Christopher Lee. This interview is not audio recorded. There is a written synopsis of the interview. This is the first time that Mr. Romero implicates Lee Roy Villarreal

or indicates he can identify Lee Roy Villarreal at all. He gives facts about Lee Roy Villarreal eerily similar to those told to him by the agents in the August 2018 meeting. He identifies a picture of Lee Roy Villarreal. We do not know if this is the same picture or a different picture than the one that he could not identify at some unknown time prior to the August 2018 interview. (Exhibit D: FD-302 of 8/28/2019 Interview)

## II.
## LEGAL ARGUMENT AND AUTHORITIES

**Relevant and Admissible Evidence**

Federal Rule of Evidence 401 states that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence need not "prove every fact necessary to prove the issue. If it be an appropriate link in the chain of proof, that is enough." *McCandless v. United States,* 298 U.S. 342, 346 (1936). Evidence that Government actors have intimidated potential defense witnesses into testifying against the defendant falls into this category of relevant and admissible evidence. *U.S. v. Shyllon*, 10 F.3d 1 (1993), a case out of the D.C. Circuit, provides a perfect example that is on point to the testimony at issue in the instant case. In *Shyllon*, the contested evidence was as follows:

> At trial, Shyllon claimed that a Government investigator had intimidated the alleged victims into testifying against him; he attempted to elicit the testimony of Jhebre Tessamichael to prove this. Shyllon sought to show that the investigator had threatened Tessamichael with prosecution if he did not testify against Shyllon. The District Court refused to allow Shyllon to call Tessamichael, and Shyllon's counsel was barred from cross-examining the investigator about Tessamichael. The trial court held that the proffered testimony was not relevant to the alleged intimidation of the four victim-witnesses who were central to the Government's case.

*Id.* Importantly, such evidence could only come through cross-examination in the *Shyllon* case, as there is no indication of any recording of the interaction between the investigator and any witness. The D.C. Circuit appellate court found that the trial court had erred by not allowing the evidence to be admitted at trial:

> Surely testimony that the investigator had intimidated Tessamichael bears on the probability that he had also intimidated the Government's [other] witnesses. Shyllon was not required to proffer evidence which would relate directly to relationships between the investigator and the government witnesses. Thus, the *McCandless* rule allowing incremental proof clearly seems to require the admission of evidence of the sort that Shyllon sought to elicit from Tessamichael.

*Id.* Similarly, Lee Roy Villarreal is attempting in the instant trial to admit evidence from Victor Romero that he was not present at the alleged kidnapping, and that his story changed to implicate Lee Roy Villarreal after he was coerced and intimidated by government actors. Additionally, Lee Roy Villarreal is requesting to admit a recording of the coercion applied to Mr. Romero before he ever implicated Lee Roy Villarreal in the kidnapping. This is relevant both to its impact on Mr. Romero, and for the argument that such techniques may have been used on any other government witness implicating Lee Roy Villarreal under the *McCandless* rule. The recording is admissible as it is not hearsay – it is not being offered for the truth of the matter asserted, but rather for the effect on the listener (Mr. Romero).

**<u>Actions of the Prosecution Team</u>**

A prosecutor will be held responsible for the conduct (and misconduct) committed by members of the "prosecution team," as that phrase is defined under federal law. The term "prosecution team" has been broadly construed, and it includes both investigative and prosecutorial personnel. *See United States v. Morris,* 80 F.3d 1151, 1170 (7th Cir.1996), *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979). The United States Attorney's Manual provides that: "Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant." U.S. Dep't of Justice, U.S. Attorney's Manual 9–5.001(B)(2) (Oct. 1, 2006) (citing *Kyles v. Whitley,* 514 U.S. 419, 437 (1995)). "[F]rom a legal standpoint, misconduct by the investigating law enforcement agents is indistinguishable from misconduct by the prosecuting attorneys." *United States v. Lorefice,* 192

F.3d 647, 651–52 (7th Cir.1999). This rule has even been extended to situations where a fellow prosecutor engages in improper behavior. *See e.g., Giglio v. United States*, 405 U.S. 150 (1972)(holding that a prosecutor is responsible for discovery violations made by a fellow U.S. Attorney and a prosecution witness even though made without the prosecuting attorney's knowledge). As such, a lack of knowledge on behalf of the prosecuting attorney will not rectify the due process violation created when a government agent engages in intimidation or interference.

Here, on the recording of the interaction between law enforcement and Mr. Romero in 2018, the government actors specifically indicate that they are assisting AUSA Anibal Alaniz in the prosecution of Lee Roy Villarreal. Additionally, they are asking him questions and providing him information that only individuals investigating and prosecuting Lee Roy Villarreal would be privy to or interested in. Therefore, everyone questioning Mr. Romero about Lee Roy Villarreal is acting as a member of the Lee Roy Villarreal prosecution team.

**Right to Compulsory Process**

A defendant's right to present his own witnesses in establishing a defense is a fundamental aspect of due process of law and is strictly protected by the Fifth and Sixth Amendments to the United States Constitution. *Washington v. Texas*, 388 U.S. 14 (1967) ("The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."). This right encompasses a defendant's Sixth Amendment right to compulsory process for obtaining witnesses in his favor. *Id.* at 19–23. "The Supreme Court in *Washington v. Texas* held that the right to compulsory process

guaranteed by the Sixth Amendment. *United States v. Calzada*, 579 F.2d 1358 (7th Cir. 1978); *see also United States v. Piper*, 912 F.3d 847 (5th Cir. 2019).

Rules of practice or the behavior of judges or prosecutors may unconstitutionally discourage or preclude a witness for the defense. In *Webb v. Texas*, 409 U.S. 95, 93 (1972), the Supreme court reversed a conviction where a witness called by the defendant became unwilling to testify after receiving harsh warnings from the trial judge about the consequences of perjury which "effectively drove that witness off the stand," *Webb*, 409 U.S. at 98. "Improper intimidation of a witness may violate a defendant's due process right to present his defense witnesses freely if the intimidation amounts to 'substantial government interference with a defense witness' free and unhampered choice to testify." *United States v. Saunders*, 943 F.2d 388, 392 (4th Cir. 1991).

Threats or intimidation made by the government that dissuades a potential defense witness from testifying constitute a violation of the defendant's Fifth Amendment right to due process of law and his Sixth Amendment right to compulsory process for obtaining witnesses in his favor. *Webb,* 409 U.S. at 98. The right to offer testimony of a witness and compel their attendance is commensurate with the right to present evidence and a defense to a jury. *Id.* "Just as the accused has the right to confront the prosecution's witness for the purposes of challenging their testimony, he has the right to present his own witnesses to establish a defense." *Id.; see also United States v. White,* 454 F.2d 435, 438–39 (7th Cir.1971) The constitutional right of a criminal defendant to call witnesses in his defense requires that they are free to testify without fear of reprisal or retaliation from the government. *United States v. Blackwell,* 694 F.2d 1325, 1334 (D.C.Cir. 1982).

**<u>Potential Remedies</u>**

Lee Roy Villarreal is requesting any of the following remedies regarding the requested admission of evidence: (1) admission of the recording and an order that Mr. Romero must testify over his assertion of his 5th Amendment privilege, (2) admission of the recording and testimony from Agent

Lee (who was present at Mr. Romero's 2019 interview) that the 2019 interview was the first time Mr. Romero implicated Lee Roy Villarreal in the kidnapping, or (3) dismissal of the indictment against Lee Roy Villarreal.

1. **Admission of the recording and an order that Mr. Romero must testify over his assertion of his 5th Amendment privilege**

The most fundamental rule of immunity is that if a witness is compelled to give evidence over an objection on Fifth Amendment grounds, the answers and evidence derived therefrom may not be used in a subsequent proceeding against them. *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52 (1964). There exists apart from any statute, a "constitutionally imposed use immunity," *Maness v. Meyers*, 419 U.S. 449, 474 (1975) (White, J., concurring) which allows a witness who was ordered to testify despite a claim of privilege to testify truthfully and later successfully challenge any future use of the statements. "[A] witness does not need any statute to protect him from the use of self-incriminating testimony he is compelled to give over his objection. The Fifth Amendment takes care of that without a statute." *Adams v. Maryland*, 347 U.S. 179, 181 (1954). A request for "defense witness immunity" is in reality a request for a court order compelling a witness to testify even though the witness raises a Fifth Amendment claim: the witness will have "use immunity" as a matter of course, without regard to any statute. Although by statute the court might not have an affirmative power to make a "grant of use immunity" the court does have an affirmative obligation to enforce the right of the accused to present a defense and may compel witnesses called by the defense to testify.

2. **Admission of the recording and testimony from Agent Lee (who was present at Mr. Romero's 2019 interview) that the 2019 interview was the first time Mr. Romero implicated Lee Roy Villarreal in the kidnapping**

If the court does not compel Mr. Romero to testify over his Fifth Amendment privilege, then Mr. Romero is an unavailable witness. Under FRE Rule 804, "A declarant is considered to be unavailable as a witness if the declarant… is exempted from testifying about the subject matter of the

declarant's statement because the court rules that a privilege applies." Therefore, his statements about his involvement in the kidnapping become admissible as statements against interest under FRE Rule 804(3). Alternatively, his statements (or lack thereof) are admissible under the FRE Rule 807 residual hearsay exception.

### 3. Dismissal of the indictment against Lee Roy Villarreal.

Article III courts draw their power to dismiss an indictment from three discrete sources. A federal court may dismiss an indictment pursuant to the Constitution, pursuant to the court's supervisory powers, or pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure. Federal courts have the power and duty to dismiss an indictment obtained in violation of the Constitution or the laws of the United States. *United States v. Holloway*, 74 F.3d 249, 253 (11th Cir. 1996). Such a violation can and does include violations of the defendant's Fifth and Sixth Amendment rights to present a defense and compulsory process. *See United States v. Linder*, No. 12 CR 22, 2013 WL 812382 (N.D. Ill. Mar. 5, 2013).[1]

A defendant's Sixth Amendment right to compulsory process is violated when the defendant is deprived of testimony that would have been relevant, material and vital to his defense—in other words, when he is prejudiced. *United States v. Yalenzuela–Bernal,* 458 US 858, 867 (1982) (quoting *Washington,* 388 U.S. at 16). Such a deprivation constitutes a violation of the defendant's right to due process of law. *Yalenzuela–Bernal,* 458 U.S. at 867. When the government's actions substantially impair a witness's decision to testify, such as by threat, coercion, interference, or intimidation, and the witness's free decision to testify is hampered, the government has denied the defendant of his Fifth Amendment right to due process of law and his Sixth Amendment right to compulsory process of

---

[1] A copy of the opinion in *Linder* is attached as Exhibit E, offered not as binding precedent, but as one example of a district court dismissal of an indictment based on similar facts, with an extensive articulation of that district court's reasoning.

witnesses in his favor, and the proper remedy for such misconduct is the dismissal of the indictment. *United States v. Burke,* 425 F.3d 400, 411 (7th Cir. 2005) (holding that a federal court possesses the power to dismiss an indictment when the government violates the defendant's right to due process); *United States v. Calzada,* 579 F.2d 1358, 1363 (7th Cir. 1978)(emphasis supplied) ("On the record before us, we cannot say that the district court erred in finding that the defendants' constitutional rights to compulsory process had been violated, nor that it abused its discretion in *concluding that the only reasonable remedy for that violation was the dismissal of the indictment."*)

Respectfully submitted,

/s/ Angelica Cogliano
Angelica Cogliano
Attorney for Defendant
SBN: 24101635
Law Office of E. G. Morris
2202 Lake Austin Blvd.
Austin, Texas 78703
Phone (512) 478-0758
Fax (877) 497-8347
Email aac@egmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of June, 2022, a true and correct copy of the foregoing memorandum was emailed to attorneys for the Government.

/s/ Angelica Cogliano
Angelica Cogliano